**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOSEPH YOSSIFON,**

**Plaintiff,**

**-vs-** **Case No. 6:02-cv-6-Orl-28KRS**

**CITY OF COCOA BEACH, FLORIDA,**

**Defendant.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on Defendant's Renewed Motion for Attorney's Fees Pursuant to Florida Statute §768.79 (doc. no. 286) and Plaintiff's Response to Defendant's Renewed Motion for Attorney's Fees Pursuant to Florida Statute §768.79 (doc. no. 293). This matter was referred to me pursuant to 28 U.S.C. § 636(b) for issuance of a report and recommendation.

## I. BACKGROUND.

Plaintiff Joseph Yossifon sued Defendant City of Cocoa Beach (City) in an eight-count complaint seeking damages under the United States Constitution and federal statutes arising from alleged violations of his civil rights and under Florida common law arising from the City's alleged negligence. This Court has federal question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331. It exercised supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

The Honorable John Antoon, II, the presiding district judge, granted summary judgment in favor of the City on all of the claims. This decision was affirmed by the United States Court of Appeals for the Eleventh Circuit. Thereafter, the City filed a motion seeking attorneys' fees under 42 U.S.C. § 1988 and Florida's offer-of-judgment statute, Fla. Stat. § 768.79.[1] Judge Antoon denied the City's motion for attorneys' fees under section 1988, finding that Yossifon's claims were not frivolous, groundless, or without merit. Doc. No. 285 (citing *Hughes v. Rowe,* 449 U.S. 5, 14 (1980)). Judge Antoon referred to me the question of whether the City is entitled to attorneys' fees under Florida's offer-of-judgment statute.

## II. ANALYSIS.

The crucial facts are undisputed. On February 17, 2003, the City served valid offers of judgment pursuant to section 768.79 on each of the state-law claims. Yossifon did not timely accept the offers of judgment. Having obtained a judgment of no liability on the state-law claims, the City seeks an award of attorneys' fees incurred after February 17, 2003, not only for work performed exclusively on the state-law claims, but also for work performed on both the federal and state-law claims, to the extent those claims are inextricably intertwined.

Yossifon argues that, as applied in this case, section 768.79 is in direct conflict with (1) the federal offer-of-judgment rule contained in Federal Rule of Civil Procedure 68, and (2) 42 U.S.C. § 1988, which permits awards of attorneys' fees to prevailing defendants only when the plaintiff's case was frivolous, groundless or without merit.[2] Because the conflict

---

[1] Costs have already been awarded to the City pursuant to Fed. R. Civ. P. 54 and 28 U.S.C. § 1920. Doc. No. 264.

[2] Yossifon also reasserts his objection that the City's renewed motion for attorneys' fees was untimely because it was served before the Eleventh Circuit issued its mandate. Judge Antoon has already determined that the renewed motion was timely. Doc. No. 285

analysis is slightly different when a state law conflicts with a federal rule of procedure than when a state law conflicts with a federal statute, I will address Yossifon's conflict arguments separately.

*A. Conflict Between Rule 68 and the Florida Offer-of-Judgment Statute.*

1. The Legal Framework to be Applied.

The determination of whether Florida's offer-of-judgment statute conflicts with the federal offer-of-judgment rule turns on the application of the Rules Enabling Act, 28 U.S.C. § 2072. It reads, in pertinent part, as follows:

> (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.
>
> (b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

The Federal Rules of Civil Procedure were promulgated pursuant to this provision. *See Willy v. Coastal Corp.,* 503 U.S. 131, 134-35 (1991). The Federal Rules of Civil Procedure "govern the procedure in the United States district courts in all suits of a civil nature . . . ." Fed. R. Civ. P. 1. Thus, Rule 68 governs offers of judgment in the present case, unless the rule is unconstitutional or it abridges, enlarges or modifies a substantive right.

The Supreme Court has held that if a Federal Rule of Civil Procedure controls an issue, it preempts conflicting state law in a case brought under a court's diversity jurisdiction, provided that the rule is both constitutional and within the authority Congress delegated to

at 2. Under the law of this circuit, "a premature motion is considered timely." *Myers v. Sullivan*, 916 F.2d 659, 679 n.20 (11th Cir. 1990).

the Supreme Court in the Rules Enabling Act to prescribe rules of practice and procedure. *See Hanna v. Plumer*, 380 U.S. 460, 469-70 (1965)(discussing whether the federal service-of-process rule or state law applied in case brought under the court's diversity jurisdiction).[3] If the rule regulates a matter that is indisputably procedural, it is constitutional. If the rule falls within an uncertain area between substance and procedure, it is constitutional if it is "rationally capable of classification as either" substance or procedure. *Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1, 5 (1987). Because of the study and approval given to federal rules of procedure and the period of review provided after a proposed rule is submitted to Congress but before it takes effect, federal rules have "presumptive validity under both the constitutional and statutory constraints." *Woods*, 480 U.S. at 6.[4]

*Woods* is itself an example of application of the *Hanna* test to determine whether a federal rule conflicts with a state statute in a context analogous to that present here. In that case, the plaintiffs, Alan and Cara Woods, filed a tort action in Alabama state court. The

---

[3] The analysis is different when a federal judge-made law conflicts with a state law, as was the case presented in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 77 (1938). The United States Court of Appeals for the Eleventh Circuit addressed the distinction in *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306-07 (11th Cir. 2002). The court explained that the familiar substantive/procedural or "outcome determinative" test of *Erie* applies to conflicts between judge-made federal law and state law. However, in conflicts between federal rules and state law, the federal rule controls provided that it is both constitutional and within the scope of the Rules Enabling Act. *Id.* at 1307 n.11.

[4] I have found no decision that directly addresses whether the *Hanna* rule applies when the district court's jurisdiction over state-law claims is founded on the court's exercise of supplemental jurisdiction under 28 U.S.C. § 1367, rather than on diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332. In *Stewart Org., Inc. v. Ricoh Corp.*, the Supreme Court noted that "the presence of a federal-question could only cut in favor of the application of federal law." 487 U.S. 22, 26 n.3 (1988). Absent any other guidance about the law to apply to state-law claims brought under the Court's supplemental jurisdiction, I will apply the *Hanna* test in the present case.

defendant, Burlington Northern Railroad Company (Railroad), removed the case to federal court under federal diversity jurisdiction. A jury subsequently found in favor of the Woods, and a money judgment was entered against the Railroad. The Railroad posted a bond to stay the judgment and appealed the decision. The court of appeals affirmed the jury's verdict. *Id.* at 2.

Thereafter, the Woods moved in the court of appeals for imposition of sanctions under an Alabama statute, which required a mandatory penalty of 10% of the amount of the damages when a judgment that had been stayed pending appeal was affirmed by the appellate court. *Id.* at 3. Alabama courts explained that the statute's purposes were "to penalize frivolous appeals and appeals interposed for delay . . . and to provide 'additional damages' as compensation to the appellees for having to suffer the ordeal of defending the judgments on appeal." *Id*. at 4 (quoting *Montgomery Light & Power Co. v. Thombs*, 87 So. 205, 211 (Ala. 1920), and *Birmingham v. Bowen*, 47 So. 2d 174, 179-80 (Ala. 1950)).

The Railroad contended the Alabama statute was inapplicable because it impermissibly conflicted with Federal Rule of Appellate Procedure 38. Rule 38 grants a federal appeals court discretion to award damages and costs to an appellee when an appeal is found to be frivolous. *Id.* at 4.

The Supreme Court began its analysis by considering "whether, when fairly construed, the scope of Federal Rule 38 is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *Id.* at 4-5 (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749-50 & n.9 (1980); and *Hanna*, 380 U.S. at 471-72). The Court concluded that Rule 38 and the

Alabama statute were in conflict because Rule 38 made an award of damages discretionary while the Alabama provision was mandatory. The Court found also that the purposes underlying the Rule were "sufficiently coextensive with the asserted purposes of the Alabama statute to indicate that the Rule occupies the statute's field of operation so as to preclude its application in federal diversity actions." *Id.* at 7.

Having found a conflict between the federal rule and the state statute, the Court turned to the questions of whether Rule 38 was constitutional and within the scope of the Rules Enabling Act. The Court found that Rule 38 was constitutional because it could "reasonably be classified as procedural. . . ." *Id*. at 8. It determined that Rule 38 was within the scope of the Rules Enabling Act because "[t]he choice made by the drafters of the Federal Rules in favor of a discretionary procedure affects only the process of enforcing litigants' rights and not the rights themselves." *Id.*

2. <u>Application of the *Hanna* Framework to the Present Issue</u>.

**(a) Is There a Conflict Between the Florida Offer-of-Judgment Statute and Federal Rule of Civil Procedure 68?**

The analysis of conflict must begin with the language of the pertinent provisions. The Florida offer-of-judgment statute provides, in relevant part, as follows:

> In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him . . . from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer . . . .

Fla. Stat. § 768.79(1).

Rule 68 provides, in relevant part, as follows:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn . . . If *the judgment finally obtained by the offeree* is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. . . (emphasis added).

The United States Supreme Court has held that Rule 68 only applies when the plaintiff obtains a judgment in his favor, not when a defendant obtains a judgment in its favor. *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981).[5] Accordingly, in this case the City would not be entitled to an award of costs, including attorneys' fees if appropriate,[6] under Rule 68 because it obtained a judgment in its favor.

In contrast, under section 768.79 a prevailing defendant is entitled to an award of costs and attorneys' fees in the event that the judgment is in its favor, that is, a judgment of

---

[5] In 1983, the Standing Committee of Rules of Practice and Procedure of the Judicial Conference of the United States proposed an amendment to Rule 68 that would have permitted a prevailing defendant to recover costs. *See* Comm. on Rules of Practice and Procedure of the Judicial Conf. of the United States, *Preliminary Draft of Proposed Amendment to the Federal Rules of Civil Procedure, Federal Rules of Criminal Procedure, Rules Governing Section 2254 Cases in the United States District Courts, and Rules Governing Section 2255 Proceedings in the United States District Courts*, 98 F.R.D. 337, 361-66 (1983). The amendment was subsequently withdrawn. *See* Steven B. Burbank, *Proposals to Amend Rule 68 – Time to Abandon Ship*, 19 U. Mich. J.L. Reform 425 (1986).

[6] Costs under Rule 68 include attorneys' fees if the substantive law governing the claim that is the subject of the offer of judgment defines costs to include attorneys' fees. *See Marek v. Chesny*, 473 U.S. 1, 8-9 (1985). The parties have not addressed whether Florida law defines costs to include attorneys' fees under the claims brought in this case.

no liability. Thus, when a state court grants summary judgment in favor of a defendant who made an offer of judgment under section 768.79, the court must award costs and attorneys' fees to the defendant under the statute unless it finds that the offer was not made in good faith. *See, e.g., Levine v. Harris*, 791 So. 2d 1175, 1177 (Fla. 4th Dist. Ct. App. 2001).

Turning to the facts of the present case, application of section 768.79 would entitle the City to an award of attorneys' fees to which it would not be entitled under Rule 68 because it is a prevailing defendant. In these circumstances, Rule 68 directly collides with section 768.79.[7] *See Woods*, 480 U.S. at 4-5; *cf. Gil de Rebollo v. Miami Heat Ass'n, Inc.*, 137 F.3d 56, 65-66 (1st Cir. 1998)(finding conflict between Rule 68 and Puerto Rico offer-of-judgment rule because defendant would recover attorneys' fees under Puerto Rico provision from prevailing plaintiff, but not under Rule 68 because underlying negligence claim did not define costs to include attorneys' fees); *but see MRO Commc'ns., Inc. v. Am. Tele. & Tele. Co.*, 197

---

[7] The decisions in *Tanker Management, Inc. v. Brunson*, 918 F.2d 1524 (11th Cir. 1990), and *McMahan v. Toto*, 311 F.3d 1077 (11th Cir. 2002), do not require a different conclusion. In *Brunson*, a case apparently brought under the Court's diversity jurisdiction, the defendant prevailed. The court did not award attorneys' fees under section 768.79 because, at that time, section 768.79 did not permit an award of attorneys' fees to a prevailing defendant. *Id.* at 1527. Therefore, the court did not engage in the analysis of conflict between Rule 68 and section 768.79. The court did analyze the conflict between Rule 68 and former Florida Statute § 45.061, to the extent that section 45.061 permitted an award of attorneys' fees to a defendant when a plaintiff unreasonably rejected a settlement offer. The court concluded that there was no conflict "[b]ecause Rule 68 applies only to offers of judgment and is in no way applicable to settlement offers as provided in section 45.061 . . . ." *Id.* at 1528. The present case involves offers of judgment, not a settlement offer.

In *McMahan*, the Eleventh Circuit awarded attorneys' fees to a prevailing defendant under section 768.79, without discussion of whether section 768.79 conflicted with Rule 68. There is no indication in the court's opinion that the question of conflict between section 768.79 and Rule 68 was presented by the parties or considered by the court. A court decision that does not consider an argument that may be lurking in the record cannot be considered to have decided the question that was not presented. *See, e.g., Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).

F.3d 1276 (9th Cir. 1999)(finding the Rule 68 does not apply in a case in which the defendant prevails, and approving award of attorney's fees under state offer-of-judgment law).

Furthermore, both Rule 68 and section 768.79 were designed to accomplish the same goal: to encourage early settlement and avoid or terminate litigation. *See Marek,* 473 U.S. at 5; *Lamb v. Matetzschk*, 906 So. 2d 1037, 1042-43 (Fla. 2005)(Pariente, J., concurring). Therefore, Rule 68 is sufficiently broad to control the issue before the Court, leaving no room for the operation of section 768.79, at least in the case of a prevailing defendant. *Cf. Stewart Org., Inc.,* 487 U.S. at 27 n.4 (Federal and state law need not be "perfectly coextensive," but the federal law should be "sufficiently broad to cover the point in dispute.").[8]

Accordingly, Rule 68 and section 768.79 are in direct conflict with respect to offers of judgment made by a prevailing defendant. *See also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3001.2 (2d ed. 1997) ("At least with offers by defendants, it would seem that state provisions similar to Rule 68 should be found to conflict with the rule.").

---

[8] In *Farmer v. United Space Alliance, L.L.C.*, Case No. 6:00-cv-189-ORL-28JGG, doc. no. 160 at 10 n.6 (M.D. Fla. Oct. 4, 2001), the court suggested that Rule 68 does not conflict with a state offer-of-judgment statute that awards costs and attorneys' fees because Rule 68 awards *only* costs, not attorneys' fees. As discussed above, however, Rule 68 costs may include attorneys' fees if the substantive law supporting the claim defines costs to include attorneys' fees. Therefore, in some instances, Rule 68 would include an award of attorneys' fees as part of costs. A prevailing defendant could not obtain those fees under Rule 68 based on the *August* decision, but could recover the attorneys' fees under section 768.79. Holding that section 768.79 can be used when the underlying law does not define costs to include attorneys' fees for purposes of Rule 68, but that section 768.79 cannot be used when the underlying law includes attorneys' fees within the definition of Rule 68 costs, would result in inconsistent application of Rule 68 to claims arising under state law. Such inconsistent application of Rule 68 would be disruptive to the federal courts, *see* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3001.2 (2d ed. 1997 & Supp. 2005), and it would undermine the principle that a conflict can exist even if the federal rule and state statute are not perfectly coextensive.

**(b) Is Rule 68 Constitutional?**

The next question in the *Hanna* analysis is whether Rule 68 is constitutional. "The purpose of Rule 68 as adopted in 1938 was to encourage settlements and avoid protracted litigation by taxing a claimant with costs if he should recover no more after trial then he would have received if he had accepted the defendant party's offer to enter judgment in the claimant's favor . . . ." Comm. on Rules of Practice and Procedure of the Judicial Conf. of the United States, *Preliminary Draft of Proposed Amendments to the Federal Rules of Civil Procedure, Federal Rules of Criminal Procedure, Rules Governing Section 2254 Cases in the United States District Courts, and Rules Governing Section 2255 Proceedings in the United States District Courts*, 98 F.R.D. 337, 363 (1983); *accord Marek,* 473 U.S. at 5. It applies irrespective of the subject matter of the underlying claims, and it does not affect the merits of the underlying claims. Rule 68 is, therefore, rationally capable of classification as a procedural rule. Accordingly, it is constitutional.

**(c) Is Rule 68 Within the Scope of the Rules Enabling Act?**

Because Rule 68 was promulgated to encourage settlements and avoid protracted litigation, it is reasonably necessary to maintain the integrity of the system of federal practice and procedure, which is designed "to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1.

The next question is whether Rule 68 violates the Rules Enabling Act because it abridges, enlarges or modifies a substantive right. The City argues that section 768.79 creates a substantive right to attorneys' fees in the context of this case. However, in a specially concurring opinion, the Honorable Robert M. Gross of the Florida Fourth District

Court of Appeal, concluded that section 768.79 is procedural for state choice-of-law purposes because its primary purpose is to encourage reasonable settlements. *See BDO Seidman, LLP v. British Car Auctions, Inc.*, 802 So. 2d 366, 370-74 (Fla. 4th Dist. Ct. App. 2001).

Moreover, section 768.79 sanctions a litigant who unreasonably fails to accept an offer of judgment that was made in good faith. The sanction applies irrespective of the merits of the case; that is, even a prevailing plaintiff may be required to pay the defendant's attorneys' fees and costs if the amount recovered was at least 25 percent less than the offer. That the sanction incidentally operates to the benefit of a prevailing defendant does not convert section 768.79 into a substantive right for purposes of the *Hanna* analysis. *See Woods*, 480 U.S. at 4 ("Rules which incidentally affect litigants' substantive rights do not violate [the Rules Enabling Act] if reasonably necessary to maintain the integrity of that system of rules."); *cf. Exxon Corp. v. Burglin*, 42 F.3d 948 (5th Cir. 1995)(Alaska provision awarding appellate attorneys' fees to prevailing party that conflicted with Fed. R. App. P. 38 found not to create a substantive right because it applied irrespective of the success of the underlying legal claim).

Accordingly, because Rule 68 is procedural and it does not infringe a state substantive right, it is within the scope of the Rules Enabling Act. *See also S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist.*, 60 F.3d 305, 312 (7th Cir. 1995)(noting that "there cannot be any doubt that Rule 68 is within the scope of the Rules Enabling Act."). Thus, under the *Hanna* legal framework, Rule 68 operates to the exclusion of Florida Statute 768.79 in the present case. Accordingly, the City is not entitled to attorneys' fees under section 768.79.

*B. Conflict Between Florida Statute § 768.79 and 42 U.S.C. § 1988.*

Alternatively, if the Court finds that Rule 68 does not conflict with section 768.79 in this case, then the Court must consider whether application of section 768.79 to award attorneys' fees incurred for work related to both the federal and state-law claims would create an impermissible conflict with 42 U.S.C. § 1988. The analysis of a conflict between a state law and a federal law is a two-step process: (1) does the federal law control the issue; and (2) is the federal law constitutional. If the answer to both factors is "yes," the federal law controls under the Supremacy Clause. *See Stewart Org.*, *Inc.*, 487 U.S. at 26.

Section 1988, as interpreted by the Supreme Court in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978), permits an award of attorneys' fees to a prevailing defendant in civil rights cases only when the plaintiff's claim was frivolous, groundless or without merit. Therefore, section 1988 is sufficiently broad to control the issue of when a defendant may be awarded attorneys' fees for work performed in the defense of a civil rights claim.

Judge Antoon has already determined that the City is not entitled to an award of attorney's fees under section 1988. To award attorneys' fees under section 768.79 for any of the work performed in defense of Yossifon's federal civil rights claims would, therefore, directly collide with the Court's earlier determination that fees are not appropriate in this case under section 1988. Under these circumstances, section 1988 controls. *See Keesee v. Bank of Am.*, *N.A.*, 371 F. Supp. 2d 1370, 1377 (M.D. Fla. 2005). Yossifon does not contend that section 1988 is unconstitutional. Accordingly, attorneys' fees for work that contributed to the defense of Yossifon's federal claims cannot be awarded under section 768.79 because

doing so would directly conflict with the requirements of 42 U.S.C. § 1988.

*C. Assessment of Fees*.

I will engage in the analysis of the amount of attorneys' fees requested by the City to assist the Court in determining the amount of attorneys' fees to be awarded in the event it determines that section 768.79 does not conflict with Rule 68 or with section 1988. I will prepare a separate lodestar analysis for work solely on the state-law claims, and the work performed on the "inextricably intertwined" aspects of both the federal and state-law claims.

1. Applicable Standards.

In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court stated that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." This amount, which is commonly referred to as the lodestar, is then adjusted to reflect the "results obtained." *Id*. at 434; *accord Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-02 (11th Cir. 1988). The lodestar approach applies with equal force to a petition for attorneys' fees under section 768.79. *See Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985).

The "'fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates.'" *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303). It is incumbent upon the party seeking fees to submit evidence that supports the number of hours worked and the hourly rate sought. *Hensley*, 461 U.S. at 433 (1983). If the party submits inadequate documentation, the district court may reduce the amount of the award. *See id*. "The applicant bears the burden of producing

satisfactory evidence that the requested rate is in line with prevailing market rates. . . . Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. . . . [S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate." *Norman*, 836 F.2d at 1299 (internal citations omitted). "[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. The Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorneys' fees. *See Scelta v. Delicatessen Support Services, Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).

In addition, section 768.79 requires courts to take the following factors into consideration when determining the reasonableness of the amount of an award of attorneys' fees:

(1) The then apparent merit or lack of merit in the claim.

(2) The number and nature of offers made by the parties.

(3) The closeness of questions of fact and law at issue.

(4) Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.

(5) Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.

(6) The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

Fla. Stat. § 768.79(7)(b).[9]

2. Reasonable Hourly Rates.

In support of its renewed motion for attorneys' fees, the City submitted affidavits from attorneys Joseph R. Flood, Jr., and Douglas T. Noah. Doc. Nos. 287-88. In addition, the City submitted an affidavit from attorney Edmund Taylor Woolfolk, who serves as an expert witness in support of the City's original motion for attorneys' fees and costs. Doc. No. 238, ex. A. Woolfolk has practiced law in Florida for more than thirty years. He served as a City Attorney, Assistant County Attorney, and municipal judge in Florida. Woolfolk reviewed the billing records and hourly rates requested by the attorneys, paralegals and law clerks that worked on this case. He opined that the hourly rates requested were reasonable. *Id.*

Flood, who is an AV rated lawyer, avers that he has been licensed to practice law since 1983. Doc. No. 287. Flood specializes in defending municipal corporations and municipal employees with a considerable portion of his practice focusing on federal civil rights claims in federal and state courts. *Id*. at 2. Flood seeks an hourly rate of $145.00 for work performed in this matter. *Id*. at 4. Yossifon does not object to this hourly rate. I find that his hourly rate is reasonable in light of Flood's experience and the work he performed in this matter.

Noah avers that he has been licensed to practice law for more than thirteen years. Doc. No. 288. During the time he worked on this case, Noah's practice consisted primarily of representing public entities in the defense of civil rights claims. *Id*. at 2. Noah seeks an hourly rate of $145.00 for work performed in this matter. Doc. No. 287 at 4. Yossifon does

[9] Yossifon does not contend that any of the section 768.79 factors support reduction of the attorneys' fees requested by the City. Therefore, I will not discuss these factors.

not object to this hourly rate. I find that Noah's hourly rate is reasonable in light of his experience and the work he performed in this matter.

William E. Lawton has been licensed to practice law for more than thirty years. *See* The Florida Bar, http://www.floridabar.org/tfb/flabarwe.nsf (last visited January 9, 2006).[10] Lawton seeks an hourly rate of $145.00 for work performed in this matter. Doc. No. 295, ex. A. Yossifon does not object to this hourly rate. I find that Lawton's hourly rate is reasonable in light of his experience and the work he performed in this matter.

Ferman M. Fernandez has been licensed to practice law for more than ten years. *See* The Florida Bar, http://www.floridabar.org/tfb/flabarwe.nsf (last visited January 9, 2006). Fernandez seeks an hourly rate of $125.00 for work performed in this matter. Doc. No. 295, ex. B. Yossifon does not object to this hourly rate. I find that Fernandez's hourly rate is reasonable in light of his experience and the work he performed in this matter.

Lamar D. Oxford has been licensed to practice law for more than twenty-five years. *See* The Florida Bar, http://www.floridabar.org/tfb/flabarwe.nsf (last visited January 9, 2006). Oxford seeks an hourly rate of $145.00 for work performed in this matter. Doc. No. 295, ex. B. Yossifon does not object to this hourly rate. I find that Oxford's hourly rate is reasonable in light of his experience and the work he performed in this matter.

---

[10] The City did not provide the Court with background information for Lawton, Fernandez, and Oxford. Because Yossifon did not object to the proposed hourly rates for these lawyers, I have drawn upon publicly available sources to provide the Court with information about the backgrounds of these attorneys. The City is cautioned, however, that in the future it should provide the Court with the background of each individual for whom it seeks attorneys' fees unless the parties have stipulated to the reasonableness of the hourly rates sought.

The City seeks an hourly rate of $65.00 for the services provided by the following paralegals: Lesley Woodstock, Laura Pierce, Beverly L. Thomas, Michelle Cawthon, and Sonja Schwentner. The City provided no information about the background and experience of these individuals. Yossifon did not object to the requested rate of $65.00 per hour for each of them. Based on my knowledge of the rates for paralegals in the central Florida market, and in the absence of objection, I find that an hourly rate of $65.00 is reasonable for the work performed by the paralegals in this matter.

3. Reasonable Number of Hours.

Yossifon objects to many of the hours claimed by the City for work performed in this matter. Doc. No. 296, attachs. 2-3. He makes six categories of objections, as follows: (1) the time allegedly spent solely on the state-law claims was actually work that was intertwined with the federal claims; (2) the work was duplicative; (3) the time worked was excessive; (4) the work should have been performed by a paralegal rather than an attorney; (5) the time entry is vague; and (6) the time is not properly billed to the opposing party because it was devoted to correcting an error made by defendant's counsel. Doc. No. 296 at 1-2. After stating these six broad categories, Yossifon's counsel simply places a letter referencing the objection beside entries on the time sheets, using I for category (1), D for category (2), E for category (3), P for category (4), V for category (5), and M for category (6). He offers no other explanation as to why he believes a category of objection applies to any given time entry, leaving the Court merely to guess about the rationale underlying the objection.[11] This

[11] For example, in many instances Yossifon asserts a general objection that certain time entries are "duplicative," yet he does not provide any argument as to why or to what extent these particular entries reflect work that is also included in another time entry.

generalized approach to making objections is insufficient as a matter of law. "[O]bjections and proof from fee opponents concerning hours that should be excluded must be specific and reasonably precise." *Barnes*, 168 F.3d at 428 (internal quotation marks and citation omitted); *see also Norman*, 836 F.2d at 1301 ("Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight.").

To assist the Court, however, I will generally review the objections under each of the categories used by Yossifon, beginning first with the time worked solely on the state-law claims, doc. no. 296, ex. A, then turning to the time worked on inextricably intertwined aspects of the federal and state-claims, *id.* ex. B.

**(a) Fees for Work Solely on the State-Law Claims**.

**Category (1): Work Performed on Inextricably Intertwined Aspects of State and Federal-Law Claims.**

Yossifon contends that the preparation of the final pretrial statement and accompanying documents is work that was necessarily intertwined with both the federal and state-law claims. Review of the file reflects that the final pretrial statement and accompanying documents addressed both the federal and state-law claims. *See* doc. no. 185. Therefore, the category 1 objections to the following time entries should be sustained because these entries are incorrectly included as work solely performed on the state-law claims: 5/12/2003, Noah, 1.1 hours; 5/30/2003, Noah, .85 hours.

Yossifon also contends that the preparation of the City's motion for summary judgment and preparation for the hearing on the motion was work that was necessarily intertwined with both the federal and state-law claims. Review of the City's motion for

summary judgment confirms that the motion addressed both the federal and state-law claims. Doc. No. 183. Therefore, the category 1 objections to the following time entries should be sustained because these entries are incorrectly included as work solely performed on the state-law claims: 4/29/2003, Flood, 3.67; 4/30/2003, Flood, 3.33; 4/30/2003, Flood, 3.33;[12] 5/27/2005, Flood, .1; 6/22/2003, Flood, 1.53;[13] 8/28/2003, Flood, .5; 8/21/2003, Pierce, 1.33; 8/21/2003, Woodstock, .67.[14]

**Category (2) – Duplicative Work**.

With respect to his objections that time worked was duplicative of other work, Yossifon identified the allegedly duplicative work but he did not cite the Court to the time entry that reflects that the same work was performed twice. The law on the need for specificity in objections was clear at the time Yossifon filed his objections, and he has had ample opportunity to comply with that law. Having failed to state his category (2) objections with

---

[12] It is not clear whether the two time entries for work performed by Flood on 4/30/2003 are duplicative – both involve the same amount of time but describe the work performed slightly differently.

[13] Yossifon also objects to this time entry under category (6), a mistake by counsel. The description of the work performed is as follows: "Revise Motion for Summary Judgment to comply with Court's Page Limit Order." When seeking reimbursement of attorneys' fees, a party must exercise billing judgment. Billing judgment requires that a party not seek reimbursement for hours that it "would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*." *Norman*, 836 F.2d at 1301 (emphasis original). Time correcting mistakes due to failure to comply with the rules of the Court is not reasonably charged to one's adversary. The page limitations for documents submitted to the Court were clear before the City filed its motion for summary judgment. Thus, any time spent to correct the City's motion to comply with the Court's rule regarding page limitations is not time that should be charged to the opposing party.

[14] Inexplicably, Yossifon did not assert category (1) objections to all time worked on the motion for summary judgment and the final pretrial statement. Because Yossifon had the burden of asserting his objections with particularity, the Court should not disallow time to which Yossifon might have, but did not, assert a category (1) objection.

sufficient particularity, I recommend that the Court overrule them.

**Category (3) – Excessive Time for Work Performed.**

With respect to his objections that time worked was excessive for the task performed, Yossifon did not always indicate the amount by which he believed the time should be reduced. He also did not explain to the Court why he believed that the time listed by the City was excessive or why he believed that the proposed reduction was appropriate. These objections are, therefore, also not stated with sufficient particularity. Accordingly, I recommend that the Court overrule them.

**Category (4) – Paralegal Work.**

"[A] fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." *Norman*, 836 F.2d at 1306. Yossifon objected to .5 hours spent by Flood on 8/20/2003 to "[o]btain cases cited in Defendant's Motion for Summary Judgment for hearing," contending that retrieving cases is more appropriately a paralegal task. This is a task that could have been quite adequately handled by a paralegal. Therefore, I recommend that the Court award fees for this time, but only at the paralegal rate of $65.00 per hour.

**Category (5) – Vague Time Entries.**

Yossifon contends that the following two time entries are vague:

6/20/2003 William E. Lawton .83 Work on Motion for Summary Judgment

6/22/2003 William E. Lawton .93 Work of Summary Judgment and Memorandum of Law

It is not clear what additional information Yossifon believes was necessary to describe the work Lawton performed. Having failed to state these category (5) objections with sufficient particularity, I recommend that the Court overrule them.

**Category (6) – Mistakes of Counsel.**

The only objection in this category is addressed in footnote 13, *supra*.

Accordingly, if the Court determines that an award of attorneys' fees is appropriate for work performed solely on the state-law claims, the lodestar for those fees would be as follows:

| **Attorneys**: | **Hourly Rate** | **Number of Hours** | **Total Reasonable Fee** |
|---|---|---|---|
| Douglas T. Noah | $145.00 | 5.62 | $814.90 |
| Joseph R. Flood, Jr. | $145.00 | 5.68 | $823.60 |
| Joseph R. Flood, Jr. (reduced rate for paralegal work) | $65.00 | .50 | $32.50 |
| William E. Lawton | $145.00 | 1.76 | $255.20 |
| **Paralegals**: | | | |
| Laura Pierce | $65.00 | 1.63 | $105.95 |
| **GRAND TOTAL** | | | $2,032.15 |

**(b) Fees for Work on Inextricably Intertwined Aspects of the Federal and State-Law Claims.**

**Category (1): Work Performed on Inextricably Intertwined Aspects of State and Federal-Law Claims.**

This category of objection is inapplicable to the Exhibit B time entries.

**Category (2) – Duplicative Work**.

With respect to his objections that time worked was duplicative of other work, Yossifon identified the allegedly duplicative work but he did not cite the Court to the time entry that reflects that the same work was performed twice. The law on the need for specificity in objections was clear at the time Yossifon filed his objections, and he has had ample opportunity to comply with that law. Having failed to state his category (2) objections with sufficient particularity, I recommend that the Court overrule them.

**Category (3) – Excessive Time for Work Performed.**

With respect to his objections that time worked was excessive for the task performed, Yossifon did not always indicate the amount by which he believed the time should be reduced. He also did not explain to the Court why he believed that the time listed by the City was excessive or why he believed that the proposed reduction was appropriate. These objections are, therefore, also not stated with sufficient particularity. Accordingly, I recommend that the Court overrule them.

**Category (4) – Paralegal Work.**

Yossifon objects to many time entries as work that should have been performed by a paralegal rather than an attorney. After reviewing these objections, I find that all but three of

them are well taken.

Yossifon objects to 2.5 hours worked by Flood on 5/28/2003 to "Prepare, file and serve Defendant's Motion to Strike Plaintiff's Evidence in Opposition to Defendant's Motion for Summary Judgment[,]" and 1.20 hours to "Prepare, file and serve Defendant's Request to Respond to Plaintiff's Response to Defendant's Motion for Involuntary Dismissal." Preparing a motion or a "request to respond" are not tasks more appropriately done by a paralegal. While it certainly would be the better practice to account separately for the time necessary to "file and serve" such motions, I find that 3.7 hours is not an unreasonable amount of time to have worked preparing the motion and request to respond identified in these time entries, after excluding time devoted to filing and serving. Therefore, I recommend that the Court overrule the category (6) objection to these time entries.

Yossifon also objects to 2 hours spent by Flood on 6/3/2003 compiling exhibits and exhibit lists for trial. It is appropriate for trial counsel to determine what exhibits will be used at trial and to prepare exhibit lists to reflect the order in which the attorney anticipates the exhibits may be introduced at trial. Accordingly, I recommend that the Court overrule the category (6) objection to this time entry.

The remaining objections address time spent in tasks that did not require the education or experience of an attorney. Accordingly, I recommend that the Court reimburse this time, a total of 19.90 hours, at the paralegal rate of $65.00 per hour.[15]

---

[15] *See* Doc. No. 295, ex. B: 09/03/2003, Noah, .20 hours (review court docket regarding order); 09/03/2003, Noah, .20 hours (telephone conference with courtroom deputy regarding pretrial conference and court docket); 02/18/03, Flood, 1.20 hours (prepare file and serve notice of deposition duces tecum and subpoena duces tecum regarding Carla Gettleman); 02/18/03, Flood, 1.20 hours (prepare file and serve notice of deposition duces tecum and subpoena duces tecum regarding Skip Walden); 02/20/03, Flood, .30 hours

**Category (5) – Vague Time Entries.**

Yossifon objects to certain time entries as vague, but he does not explain what additional information he believes should have been included in the description of the work performed. Having failed to state these category (5) objections with sufficient particularity, I recommend that the Court overrule them.

**Category (6) – Mistakes of Counsel.**

Yossifon raises only two objections in this category. First, Yossifon objects to time worked by Oxford on 4/30/2005, described as "[l]egal research regarding sanctions and dismissal." Yossifon provides no reason to believe that this research was conducted to remedy a mistake made by the City's counsel. I note that the research was performed after the City responded to an Order to Show Cause issued by the Court, so this research did not pertain to the Order to Show Cause. *See* Doc. Nos. 17, 19. Accordingly, I recommend that the Court overrule this objection.

---

(prepare, file and serve amended notice of deposition for Carla Gettleman); 02/20/03, Flood, .30 hours (prepare, file and serve amended notice of deposition for Skip Walden); 02/24/2003, Flood, .30 hours (prepare, file and serve second amended notice of deposition for Ms. Gettleman); 02/28/03, Flood, .30 hours (prepare, file and serve second amended notice of deposition for Skip Walden); 03/07/03, Flood, .30 hours (prepare, file and serve amended notice of deposition for Carla Gettleman ); 03/07/03, Flood, .30 hours (prepare, file and serve amended notice of deposition for Skip Walden); 04/10/03, Flood, .50 hours (prepare, file and serve notice of hearing on defendant's motion to dismiss or in the alternative motion to consolidate); 04/30/03, Flood, 1.50 hours (organize deposition transcripts and pleadings for filing with court); 05/01/03, Flood, .50 hours (compile exhibits to attach to John Kabboord's affidavit); 05/01/03, Flood, .30 hours (e-mail to Knight affidavit for review); 05/01/03, Flood, 1.00 hours (organize all pleadings for filing in federal court); 05/23/03, Flood, .20 hours (letter to Gary Wawrzaszek enclosing order); 05/28/03, Flood, .50 hours (prepare notice of filing); 08/27/03, Flood, .50 hours (prepare file and serve amended subpoena for Shari Evetts); 09/02/03, Flood, 1.00 (prepare subpoena for Borden, Soileau, P. Davis and letters); 09/10/03, Flood, 6.20 hours (prepare letters regarding trial status to 31 witnesses); 09/26/03 , Flood, 3.10 hours (letters to 10 witnesses regarding case dismissed).

Next, Yossifon objects to .10 hours worked by Flood on 05/01/03, described as "[r]eceive and review Order Denying Defendant's Expedited Unopposed Motion to File Brief in Excess of 20 Pages." As previously discussed, the page limitations for documents submitted to the Court were clear from the outset of this litigation. Thus, I recommend that the Court sustain Yossifon's objection to this time entry.

Accordingly, if the Court determines that an award of attorneys' is appropriate for work performed on the inextricably intertwined aspects of the federal and state-law claims, the lodestar for those fees would be as follows:

| **Attorneys**: | **Hourly Rate** | **Number of Hours** | **Total Reasonable Fee** |
|---|---|---|---|
| Beth A. Thomas | $125.00 | 25.60 | $3,200.00 |
| Ferman M. Fernandez | $125.00 | 17.70 | $2,212.50 |
| Lamar D. Oxford | $145.00 | 1.20 | $174.00 |
| Douglas T. Noah | $145.00 | 157.80 | $22,881.00 |
| Douglas T. Noah (reduced rate for paralegal work) | $65.00 | .40 | $26.00 |
| Joseph R. Flood, Jr. | $145.00 | 467.50 | $67,787.50 |
| Joseph R. Flood, Jr. (reduced rate for paralegal work) | $65.00 | 19.5 | $1,267.50 |
| **Paralegals**: | | | |
| Lesley Woodstock | $65.00 | 13.90 | $903.50 |
| Beverly L. Thomas | $65.00 | 42.00 | $2,730.00 |
| Michelle Cawthon | $65.00 | 10.30 | $669.50 |
| Sonja Schwentner | $65.00 | .90 | $58.50 |

| Laura Pierce | $65.00 | 243.10 | $15,801.50 |
|---|---|---|---|
| **GRAND TOTAL** | | | $117,711.50 |

## III. RECOMMENDATION.

For the reasons discussed above, I respectfully recommend that the Court **DENY** Defendant's Renewed Motion for Attorney's Fees Pursuant to Florida Statute § 768.79 (doc. no. 286).

If the Court determines that section 768.79 does not conflict with Rule 68, but does conflict with 42 U.S.C. § 1988 with respect to work performed on inextricably intertwined aspects of the federal and state-law claims, then the Court would grant the motion in part and award the City $2,032.15 in attorneys' fees incurred for work solely on the state-law claims.

If the Court determines that section 768.79 does not conflict with Rule 68 or with section 1988 under the circumstances of this case, then the Court would grant the motion and award the City $119,743.65[16] in attorneys' fees.

**RESPECTFULLY RECOMMENDED** this 18th day of January, 2006.

Karla R. Spaulding
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

cc: Presiding District Judge and Courtroom Deputy Clerk
Counsel of Record

---

[16] This amount is the total of the attorneys' fees incurred for work solely on the state-law claims ($2,032.15) plus the attorneys' fees incurred for work on inextricably intertwined aspects of the federal and state-law claims ($117,711.50).